UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NCL (BAHAMAS) LTD.<br>d/b/a NORWEGIAN CRUISE LINE,<br><br>        Plaintiff,<br>  v.<br><br>O.W. BUNKER USA INC. and KELLY<br>BEAUDIN STAPLETON, LIQUIDATING<br>TRUSTEE OF THE OWB USA<br>LIQUIDATING TRUST,<br><br>        Defendants. | Civil Action No.<br>3: 17 - CV - 01327 (CSH)<br><br><br>SEPTEMBER 1, 2017 |

## MEMORANDUM

**HAIGHT, Senior District Judge:**

A hearing will take place on September 7, 2017 at 2:00 p.m. The principal issue on the agenda is whether Plaintiff Norwegian Cruise Line ("NCL") is entitled to a preliminary injunction "prohibiting" Defendants O.W. Bunker USA Inc. ("OWB USA") and /or Kelly Beaudin Stapleton, as Liquidating Trustee of OWB USA, "from pursuing payment from NCL in arbitration or any other forum pending resolution of this Declaratory Judgment action." Complaint for Declaratory Judgment and Injunctive Relief [Doc. 1] at ¶ 1.

The case arises out of a delivery of bunker fuel to NCL's cruise liner M/V NORWEGIAN SPIRIT ("the Vessel") at the port of Piraeus, Greece on October 18, 2014. The physical supplier of the bunkers was a Greek company called EKO. NCL had contracted with OWB USA for this delivery to the Vessel. OWB USA contracted for the delivery with a related entity, O.W. Bunker

1

Malta Ltd. ("OWB Malta"), which in turn contracted with EKO. A flurry of invoices for payment for the bunkers resulted. EKO invoiced OWB Malta. OWB Malta invoiced OWB USA. OWB USA invoiced NCL.

No invoices for this delivery had been paid when, on November 13, 2014, OWB USA filed a voluntary bankruptcy petition in this District. This was one of a number of global O.W. Bunker companies' failures. Judge Caproni of the Southern District of New York has observed: "It is an understatement to say that O.W.'s collapse caused a significant disruption in the world of maritime bunkers." *Clearlake Shipping PTE Ltd. v. O.W. Bunker (Switzerland) SA*, 239 F. Supp. 3d 674 (S.D.N.Y. 2017). Judge Forrest, another SDNY Judge, noted in *Ing Bank v. M/V TEMARA*, 203 F. Supp.3d 355, 358 (S.D.N.Y. 2016), that "this is one of many cases in this district and around the country and planet that has resulted from the November 2014 collapse of O.W. Bunker & Trading A/S [a Danish company], formerly the world's largest bunker supplier, and [many] other affiliated entities." Judge Forrest went on to say: "The basic pattern, in both this case and many others, is that the relevant OW Bunker entities arranged to have bunkers provided to a ship by a physical supplier, the bunkers were delivered, and then the OW Bunker companies collapsed before anyone was paid." *Id*.

The case at bar falls within that basic pattern. EKO, the physical supplier whose invoice for bunkering the NORWEGIAN SPIRIT at Piraeus was unpaid, threatened to arrest the Vessel as she lay at a French port. To prevent the disruption of the cruise then in progress, NCL paid EKO for the bunkers EKO had physically supplied to the Vessel. In those circumstances, NCL was disinclined to pay OWB USA's invoice for the same bunkers, which OWB USA presented to NCL, purportedly pursuant to the head contract between NCL and OWB USA. The Liquidating Trustee of OWB USA,

a Defendant herein, responded to NCL's refusal to pay that invoice by instructing solicitors in London to commence arbitration for the purpose of collecting the amount of OWB USA's invoice to NCL.

OWB USA and NCL have appointed arbitrators in London. The arbitration panel is completed when the two arbitrators appointed by the parties select a third. NCL has appointed an arbitrator while reserving its right to contend that it is not bound to arbitrate OWB USA's claim on this invoice. The parties have been called upon to submit their statements of claim, in accordance with the London Maritime Arbitrators' Association rules of practice. This is the arbitration that NCL seeks by this action in this Court to enjoin.

In this action, NCL presses the contention that it is not bound to arbitrate the underlying claim of OWB USA. This gives rise to a threshold question which counsel should be prepared to discuss at the preliminary injunction hearing. Specifically, OWB USA contends that its demand for arbitration in London is authorized by a London arbitration clause in the contract between NCL and OWB USA, which formed a part of the back-to-back chain of contracts leading eventually to Piraeus and EKO's physical supplying of bunkers to the Vessel in October 2014.

NCL contends that certain provisions in the chain of contracts have the effect of superseding the arbitration agreement in its head contract with OWB USA, with the result that there is no contract binding NCL to arbitrate OWB USA's claim against it, in London or anywhere else. That proposition, if established by NCL, would militate significantly in favor of NCL's motion to enjoin the London arbitration, it being well settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986) (citation and internal quotation

marks omitted).

Resolution of this question – whether NCL is contractually bound to arbitrate OWB USA's bunkers payment claim in London – may be decisive of all issues posed by the declaratory judgment action at bar.[1] Under American law, it is for the courts, and not arbitrators, to determine if the parties have agreed to arbitrate a particular dispute. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs.*, 475 U.S. at 649. "It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). That question lies at the core of NCL's request that this Court enjoin the pending London arbitration. NCL bases that request, *inter alia*, upon the proposition that "there is no enforceable arbitration provision to support the Liquidating Trustee's actions and NCL did not agree to arbitrate this dispute." Emergency Motion to Stay Arbitration [Doc. 2] at 2. Counsel will be asked for their assistance on that issue at the hearing.

I note in passing that the tidal waves emanating from the O.W. Bunkers Group's collapse are washing up in London arbitrations and the English courts. In May 2016, the English Supreme Court gave its judgment in *PST Energy 7 Shipping LLC v. O.W. Bunker Malta Ltd.*, [2016] A.C. 1034. This was another case falling within the pattern Judge Forrest described in *Temara*. A vessel with the evocative name of RES COGITANS received a delivery of bunkers at the Russian port of Tuapse

---

[1] The Declaratory Judgment Act, 28 U.S.C. § 2201, which NCL invokes, is a remedial statute. It cannot serve as the source of a district court's subject matter jurisdiction, which must be found elsewhere. In this case, NCL's complaint sufficiently alleges jurisdiction based upon the parties' diversity of citizenship, 28 U.S.C. § 1332.

4

in the Black Sea on November 4, 2014. The physical delivery was arranged by a company called RMUK, whose affiliate had facilities in Tuapse and made the actual delivery of the bunkers to the vessel at that port, thereby playing the role that EKO, the supplier to the NORWEGIAN SPIRIT at Piraeus, played in this case. To obtain these bunkers, the Owners of the RES COGITANS had entered into a contract with entities in the O.W. Bunker Group that mirrored the chain of back-to-back contracts involved in the case at bar. RMUK, the bunker supplier, sent its invoice to the O.W. company with whom it had contracted. That invoice was not paid because of the O.W. Bunker Group's financial collapse. RMUK sent a "Demand for Payment" to the vessel Owners, who disregarded it. "The Supreme Court was given no indication that RMUK has since then taken any formal steps to pursue this claim against the Owners." I have quoted ¶ 9 of Lord Mance's Judgment for the English Supreme Court.[2] In that regard, the bunker supplier to the RES COGITANS differs from EKO, the supplier to the NORWEGIAN SPIRIT. EKO threatened the arrest of the NORWEGIAN SPIRIT and her Owners (NCL) paid EKO's invoice.

Reverting to the RES COGITANS case, what the vessel Owners did next is described by Lord Mance in ¶ 10 of his Judgment: "By the end of November 2014, the Owners had commenced arbitration proceedings claiming a declaration that they had no liability to pay OWBM and/or ING for the bunkers."[3] The vessel Owners' likely motivation is captured by Lord Mance in ¶ 2 of his Judgment:

---

[2] The full text of the Judgment may be accessed online at http://www.bailii.org/cases/UKSC/2016/23.html (visited August 31, 2017) and https://www.supremecourt.uk/cases/uksc-2015-0236.html (visited September 1, 2017).

[3] "OWBM" was an O.W. Bunkers Group entity involved in the bunkers delivery to the RES COGITANS. "ING" is a bank that financed the Group and claimed as "assignees of any claim which OWBM has against the Owners." Judgment at ¶ 3.

5

> The essential problem arises from the insolvency of the OW Bunker Group and the concerns of vessel owners that they may be exposed to paying twice over, once to their immediate bunker supply group now insolvent, and again to the ultimate source of the bunkers who may claim rights under a reservation of title or maritime lien. The concerns stem from what are understood to be fairly typical conditions on which bunkers are supplied worldwide.

In those circumstances, Lord Mance added disarmingly: "We are told that many similar cases worldwide await our decision with interest." Judgment ¶ 1.

The vessel Owners in the RES COGITANS case argued that on a proper construction of the bunkers supply contracts in question and the O.W. Bunker Group's intervening insolvency, the Owners were not required to pay the O.W. invoice for the bunkers in question. The arbitrators conducted a hearing and wrote an award holding that "OWBM/ING would be entitled to payment." *Id.* ¶ 10. The Owners appealed the award to the courts, as English law allows. The High Court dismissed the Owners' appeal, as did the Court of Appeal. The Supreme Court granted the Owners leave to appeal, and affirmed the judgments below. Lord Mance's Judgment concluded at ¶ 59 that "the contract between OWBM and the Owners was not one for sale, but sui generis"; that "it was not subject to any such implied term or terms, regarding performance by OWBM (or OWBAS) of any supply contract higher up the chain, as the Owners have alleged"; and that "the Owners have no defence to OWBM's claim to the agreed price." *Id.* ¶ 59.

I make these references to the RES COGITANS Judgment not because I regard that Judgment as determinative or persuasive on the underlying merits of the case before me. But it is of interest to note, in perusing the Judgment, that the Owners of the RES COGITANS demanded the O.W. Bunker interests arbitrate in London the Owners' claim that they were *not obligated* to pay the bunkers invoice. The arbitration clause the Owners of the RES COGITANS invoked seems to be

the same clause, appearing in the same place in the contractual chain, that the Owners of the NORWEGIAN SPIRIT contend does not apply to the OWB USA Liquidating Trustee's claim that those Owners *are obligated* to pay a bunkers invoice issued under closely comparable circumstances. Of course, the parties in the cases are not the same, and the circumstances differ: "the concerns of vessel owners that they may be exposed to paying twice over," expressed by Lord Mance in his Judgment, are closer to realization in the case at bar, where NCL has paid EKO's invoice and is now asked to pay OWB USA's invoice for the same bunkers. Nonetheless, I invite counsel to comment upon what effect, if any, they think this English decision should have upon the Court's disposition of NCL's pending motion.

The Court makes no Order to accompany this Memorandum. My purpose is simply to aid counsel in understanding preliminary thoughts occurring to me, which may be of value to counsel in fashioning arguments intended to be of assistance to the Court.

Dated: New Haven, Connecticut
September 1, 2017

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge