UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

NCL (BAHAMAS) LTD., d/b/a
NORWEGIAN CRUISE LINE,

    Plaintiff,

v.

O.W. BUNKER USA, INC. and KELLY
BEAUDIN STAPLETON, Liquidating
Trustee of the OWB USA Liquidating Trust,

    Defendants.

Civil Action No.
3:17-CV-1327 (CSH)

NOVEMBER 29, 2017

## PRELIMINARY INJUNCTION ORDER

**HAIGHT, Senior District Judge**:

This matter came before the Court on motion by Plaintiff NCL (Bahamas) Ltd. d/b/a Norwegian Cruise Lines ("NCL"), requesting "a stay of arbitration and/or an injunction to prevent the Defendants [O.W. Bunker USA Inc. ("O.W. USA") and the OWB USA Liquidating Trustee ("Liquidating Trustee")] from pursuing arbitration proceedings that the OWB USA Liquidating Trustee has attempted to initiate in London, England." Doc. 2, at 1. *See also* Doc. 15 (NCL's "Emergency Motion for Temporary Restraining Order and Preliminary Injunction"), at 1-2.[1]

Defendants demand that NCL participate in an arbitration in London to determine NCL's liability to pay an invoice O.W. USA sent to NCL for the value of bunkers delivered to one of NCL's

---

[1] "On August 17, 2017, the Defendants filed claim submissions in the [London] arbitration that is the subject of NCL's emergency motion," which seeks, *inter alia*, a preliminary injunction. Doc. 15, at 1.

1

ships, the M/V NORWEGIAN SPIRIT, by the Greek supplier EKO at the port of Pireaus, Greece, on October 18, 2014. *See* Doc. 2-4 ("Invoice" dated "18. October 2014"). O.W. USA makes this demand pursuant to Article P.1 of the "OW Bunker Group Terms and Conditions for Sale of Marine Bunkers" [Doc. 2-5] (herein "the OWB T&C"), which contains a provision dictating that the agreement "shall be governed and construed in accordance with English law" and disputes arising under the agreement "shall be finally settled by arbitration in London."[2] Doc. 2-5, at 11.

In the particular circumstances attending the EKO bunkering in Piraeus in October 2014, NCL has responded to the arbitration demand by asserting that there is no contract between O.W. USA and NCL obligating NCL to arbitrate O.W. USA's claim in London. NCL has based that contention upon its interpretation of certain provisions in the OWB T&C, which were incorporated by reference in the sales order for the bunkers delivery in question. Specifically, "in circumstances where the physical supply of the Bunkers is being undertaken by a third party which insists that the Buyer is also bound by its own terms and conditions," Article L.4(a), in the event that the third party's terms include "[a] different law and/or forum selection for disputes," those different selections

---

[2] Article P.1 of the OWB T&C states in relevant part:

This Agreement shall be governed and construed in accordance with English law.
. . .
Except for circumstance referred to in Clause P.5 below [where the party requesting bunkers is not the "Owner of the Vessel"] all disputes arising in connection with this Agreement or any agreement relating hereto, save where the Seller decides otherwise in its sole discretion, shall be finally settled by arbitration in London, England in accordance with the Arbitration Act 1996 (or any subsequent amendment).

Doc. 2-5, at 11.

are, and in this case have been, "incorporated into" the contract, Article L.4(b)(iii).[3]

As NCL's barrister, Mr. Karia, explained:

The *prima facie* position [of NCL] is that the contract between the Seller [OW USA] and the Buyer [NCL] is subject to the OWB T&Cs, including the English law and London arbitration clause in clause P.1 (cls. A.2 & P.1).

Clause L.4, however, makes an exception to that *prima facie* rule when the third party physically supplying the bunkers to the Buyer (i.e. "the physical supplier" – here, EKO) "*insists that the Buyer is also bound by its* [i.e. the physical supplier's] *own terms and conditions*." (cl. L.4(a)).

In that situation, the Contract is varied so as to incorporate that physical supplier's standard terms and conditions, which then take precedence over the OWB T&Cs.

Doc. 39-1 ("Expert Declaration of Chirag Karia, Q.C.," dated June 16, 2017), ¶¶14.1-14.3 (emphasis in original).

In opposition, O.W. USA contends that on a proper construction of the OWB T&C, the parties' contractual obligation to arbitrate disputes in London is not affected by events at the bunkers

---

[3] Article L.4 of the OWB T&C provides in pertinent part:

(a) These Terms and Conditions are subject to variation in circumstances where the physical supply of the Bunkers is being undertaken by a third party which insists that the Buyer is also bound by its own terms and conditions. In such circumstances, *these Terms and Conditions shall be varied accordingly*, and the Buyer shall be deemed to have read and accepted the terms and conditions imposed by the said third party.

(b) Without prejudice or limitation to the generality of the foregoing, in the event that the third party terms include:
. . .
  (iii) *A different law and/or forum selection for disputes* to be determined, then such law selection and/or forum shall be incorporated into these terms and conditions.

Doc. 2-5, at 9 (emphasis added). The parties to the contract mis-numbered the paragraphs in Article L.4(b) by including two "ii"'s (instead of "ii" and "iii"). The Court refers to the second paragraph labeled as "L.4(b)(ii)" as "L.4(b)(iii)" throughout this Order.

delivery port of Piraeus. In particular, O.W. USA asserts that EKO's choice of Greek law and its forum selection of Greece in its sales contracts with O.W., have not superseded the London arbitration clause in the OWB T&C. *See* Doc. 34, at 9-11.

Upon review of the parties' briefs and numerous declarations of their respective barristers, Messrs. Karia and Mander, the Court has determined that there is no written agreement obligating NCL to arbitrate the claim (relating to the October 2014 EKO bunkering) in London.[4] *See* Doc. 47 ("Ruling on Plaintiff's Motion to Stay or Enjoin Arbitration," filed November 29, 2017). Article L.4 of the contract for supply of bunkers to the M/V NORWEGIAN SPIRIT, between O.W. USA as Seller and NCL as Buyer, has varied and superseded the provisions of the OWB T&C's Article P.1. The sale was performed "in circumstances where the physical supply of the Bunkers [was] being undertaken by a third party [EKO] which insist[ed] that the Buyer [was] also bound by its own terms and conditions," Article L.4(a). *See* Doc. 2-5, at 9. Third party EKO's terms included "[a] different law and/or forum selection for disputes," so that those different selections were "incorporated into" the terms and conditions of the OWB T&C, Article L.4(b)(iii). *See* Doc. 2-5, at 9*; see* also Doc. 47 (Ruling, filed November 29, 2017).

In general, in the Second Circuit, "[a] party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits or ... sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the

---

[4] Both of Mr. Karia's declarations, and Mr. Mander's declarations of June 16 and September 22, 2017, were filed on the docket of this case. *See* Docs. 34-2, 39-1, 44-1, 45-1. Mr. Mander's declaration of June 23, 2017, appears on the docket of NCL's bankruptcy action. *See* Bankr. Case No. 17-05008, Doc. 39.

balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (citation and internal quotation marks omitted).

However, as stated in the Court's Ruling, the Second Circuit holdings in *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 142 (2d Cir. 2011), and *Goldman, Sachs & Co. v. Golden Empire Sch. Fin, Auth.*, 764 F.3d 210, 213-14 (2d Cir. 2014), arguably suggest "that a preliminary injunction enjoining an arbitration in these particular circumstances does not depend for its issuance upon the movant's showing of irreparable harm if the injunction is not granted or likelihood of success on the merits, prerequisites for a preliminary injunction in other contexts." Doc. 47, at 41-42.

Nonetheless, the Court alternatively includes in this Order the typical prerequisites for preliminary injunction to ensure completeness of analyses and reasoning. The Second Circuit has observed that a party "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (quoting *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir.1997)). *See also J.P. Morgan Sec. LLC v. Quinnipiac Univ.*, No. 14 Civ. 429 (PAE), 2015 WL 2452406, at *6 (S.D.N.Y. May 22, 2015) ("As a matter of law, there is irreparable harm when a party is 'compelled to arbitrate ... without having agreed to arbitration' because that party is 'forced to expend time and resources arbitrating an issue that is not arbitrable.'") (quoting *NASDAQ OMX Group, Inc. v. UBS Secs. LLC*, No. 13 Civ. 2244(RWS), 2013 WL 3942948, at *12 (S.D.N.Y. June 18, 2013)); *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) ("[I]t is not merely expense that underlies the prohibition against forcing a party to arbitrate a dispute that it did not agree to arbitrate;" because that

party "would also lose its right to have defendants' claims adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction it has not consented."), *aff'd*, 405 F. App'x 550 (2d Cir. 2011).

In the case at bar, there would be "irreparable harm" as a matter of law should NCL be compelled to arbitrate the claim at issue in London. Not only would it incur expenditures of time and resources, it would lose the potential right to have the claim regarding bunkers payment adjudicated in a court of law. Under such circumstances, "a district court may properly enjoin arbitration proceedings that are not covered by a valid and binding arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 142. *See also Goldman, Sachs & Co.*, 764 F.3d at 213-14 (holding district court " had authority to enjoin arbitration . . . . Federal courts generally have remedial power to stay arbitration.").

Having found irreparable harm as a matter of law (due to no contract to arbitrate in London in these circumstances), the Court has concluded that NCL (1) would succeed on the merits of whether it must arbitrate in London, and (2) is the party who would suffer by needless expenditure of time and resources, as well possible loss of the right to adjudicate in court, should arbitration be forced to proceed there. *See* Doc. 47, at 42-43. Moreover, in light of the parties' right to contract as they desire, the injunction does nothing to disserve the public interest.[5]

Accordingly, NCL's Motion for Preliminary Injunction [Doc. 2], having been GRANTED,

---

[5] *See, e.g., Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) ("In reviewing a written contract, a trial court's primary objective is to *give effect to the intent of the parties* as revealed by the language they chose to use.") (emphasis added); *Szydlo v. United States*, No. 3:16-CV-0127 (VLB), 2017 WL 125016, at *6 (D. Conn. Jan. 12, 2017) ("Courts do not rewrite contracts for the parties, but will instead *bind parties to express terms of their contract* absent countervailing policy considerations.") (emphasis added) (citations and internal quotation marks omitted).

pursuant to Federal Rule of Civil Procedure 65(d), it is hereby ORDERED, ADJUDGED, and DECREED that Defendants O.W. Bunker USA, Inc., and its Liquidating Trustee, Kelly Beaudin Stapleton, and each of their agents, servants, employees and representatives, and those persons acting in concert or participation with them or any of them, are hereby PRELIMINARILY ENJOINED, until further order of this Court, from initiating, attempting to initiate, continuing, proceeding with, or otherwise pursuing arbitration in London with respect to the bunkers invoice from O.W. Bunker USA, Inc. to NCL regarding the delivery of bunkers to the M/V NORWEGIAN SPIRIT by EKO in Piraeus, Greece, on October 18, 2014.[6]

The Court clarifies that it makes no order at this time regarding NCL's broad request that the Court enjoin the Defendants from pursuing arbitration "in any other forum." Doc. 2, at 4. Moreover, this Order does not address NCL's prayer for a "judgment against Defendants O.W. and the Liquidating Trustee, declaring that NCL is entitled [to] equitable subrogation, setoff, recoupment, priority through payment under compulsion, or other recognition of the amount that it has already paid for the [bunkers] Order and thus is not liable to O.W. or the Liquidating Trustee for any amounts with respect to the Order." Doc. 1, ¶ 46.

As stated in its contemporaneously filed Ruling [Doc. 47], the Court has provided O.W. USA "an opportunity to challenge the inference upon which this Ruling significantly depends: specifically, that [on October 18, 2014,] at the time EKO supplied the contracted-for bunkers to the NORWEGIAN SPIRIT, O.W. Malta (and possibly other O.W. entities) knew about EKO's standard terms and conditions and agreed to them (which is to say, did not object to them)." Doc. 47, at 40-

---

[6] The invoice at issue, dated October 18, 2014 [Doc. 2-4], was in the amount of $694,548.44. The due date was November 17, 2014.

7

41. Relevant evidence which might negate that inference is entirely within the knowledge and control of the O.W. Group. O.W. USA is reminded that such proof, if any, that EKO neither knew of, nor assented to, EKO's standard terms and conditions must be submitted on or before **January 30, 2018.** If Defendants fail to submit evidence in this regard by that deadline, the Court will make the preliminary injunction final and permanent. Pending Defendants' submission of such proof, the Court ORDERS that the preliminary injunction SHALL REMAIN IN EFFECT TILL FURTHER ORDER OF THIS COURT.

It is FURTHER ORDERED that no bond need be posted.

Moreover, it is FURTHER ORDERED that electronic service of this ORDER upon Defendants through docketing upon this Court's CM/ECF filing system will complete Plaintiff's service of this ORDER upon Defendants, providing Defendants with adequate notice thereof through immediate electronic mail (email) to their named counsel of record.

It is SO ORDERED.

Dated: New Haven, Connecticut
November 29, 2017

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge