UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NCL (BAHAMAS) LTD., d/b/a NORWEGIAN CRUISE LINE,<br><br>Plaintiff,<br><br>v.<br><br>O.W. BUNKER USA, INC. and KELLY BEAUDIN STAPLETON, Liquidating Trustee of the OWB USA Liquidating Trust,<br><br>Defendants. | Civil Action No.<br>3:17-CV-1327 (CSH)<br><br><br><br>AUGUST 12, 2021 |

**MEMORANDUM AND ORDER**

**HAIGHT, Senior District Judge:**

Plaintiff NCL (Bahamas) Ltd. ("NCL"), the owner of the M/V *Norwegian Spirit*, a Bahamas-flag passenger ship, renews its motion to enjoin arbitration in London of a claim by Defendant O.W. Bunker USA, Inc. ("O.W. USA") for the value of bunkers delivered to the vessel at the port of Piraeus, Greece, in October 2014. *See* Doc. 94

In a Ruling reported at 280 F. Supp. 3d 324 (S.D.N.Y. 2017) ("*NCL I*"), this Court granted NCL's motion for a preliminary injunction staying the London arbitration. O.W. USA and its Liquidating Trustee in bankruptcy appealed that injunction. The Second Circuit issued a summary order, 745 F. App'x 416 (2d Cir. Dec. 19, 2018) ("*NCL II*"), which vacated this Court's preliminary injunction and remanded the case with particular instructions for the taking of further evidence. Familiarity with both rulings is assumed.

1

*NCL I* held in substance that (1) Article L.4 of the bunker supply contract between O.W. USA and NCL superseded the provision in Article P.1 of that contract for arbitration of disputes in London, if the physical supply of the bunkers was performed by a third party which insisted upon its own terms and conditions, including a different forum selection clause; (2) third party EKO supplied the bunkers to the *Norwegian Spirit* at Piraeus pursuant to a contract between EKO and O.W. Malta which provided for the application of Greek law and the exclusive jurisdiction of Piraeus courts; and (3) O.W. Malta and, through it, O.W. USA, knew of and were bound by those conditions, upon which EKO insisted. On that third point of decision, I reasoned in *NCL I*:

> The presence of EKO and O.W. Malta in Piraeus, and the nature of those companies' businesses in that busy port city, give rise to the reasonable inference, which I draw, that O.W. Malta was aware of EKO's standard terms and conditions, and agreed to them when it placed with EKO the order for the bunkers destined for the *Norwegian Spirit*.

280 F. Supp. 3d at 346. Given these holdings, I preliminarily enjoined the arbitration in London O.W. USA demanded with NCL.

While the Second Circuit's summary order in *NCL II* vacated that injunction, I do not read the court of appeals' reasoning as disturbing either of the first two holdings in *NCL I*. It seems to me that *NCL II* affirmed those holdings *sub silentio*.[1] Rather, the Second Circuit in *NCL II* identified the unresolved issue as "whether EKO had taken a firm position that NCL be bound by

---

[1] For the present, I disagree with O.W. USA's contention in its brief that the Second Circuit also held the "old evidence" was "insufficient to show that EKO properly incorporated its own terms and conditions into its sales contract with another third party, O. W. Bunker Malta Ltd." Doc. 96, at 5. The text of EKO's terms and conditions was in the record before the court of appeals, which quoted the pertinent language, 745 F. App'x at 418, and then identified the question requiring remand as "whether EKO had taken a firm position *that NCL* be bound by EKO's terms and conditions here." *Id*. at 419 (emphasis added). Counsel for Defendants may argue the contrary proposition at the hearing scheduled *infra*.

*NCL I* held in substance that (1) Article L.4 of the bunker supply contract between O.W. USA and NCL superseded the provision in Article P.1 of that contract for arbitration of disputes in London, if the physical supply of the bunkers was performed by a third party which insisted upon its own terms and conditions, including a different forum selection clause; (2) third party EKO supplied the bunkers to the *Norwegian Spirit* at Piraeus pursuant to a contract between EKO and O.W. Malta which provided for the application of Greek law and the exclusive jurisdiction of Piraeus courts; and (3) O.W. Malta and, through it, O.W. USA, knew of and were bound by those conditions, upon which EKO insisted. On that third point of decision, I reasoned in *NCL I*:

> The presence of EKO and O.W. Malta in Piraeus, and the nature of those companies' businesses in that busy port city, give rise to the reasonable inference, which I draw, that O.W. Malta was aware of EKO's standard terms and conditions, and agreed to them when it placed with EKO the order for the bunkers destined for the *Norwegian Spirit*.

280 F. Supp. 3d at 346. Given these holdings, I preliminarily enjoined the arbitration in London O.W. USA demanded with NCL.

While the Second Circuit's summary order in *NCL II* vacated that injunction, I do not read the court of appeals' reasoning as disturbing either of the first two holdings in *NCL I*. It seems to me that *NCL II* affirmed those holdings *sub silentio*.[1] Rather, the Second Circuit in *NCL II* identified the unresolved issue as "whether EKO had taken a firm position that NCL be bound by

---

[1] For the present, I disagree with O.W. USA's contention in its brief that the Second Circuit also held the "old evidence" was "insufficient to show that EKO properly incorporated its own terms and conditions into its sales contract with another third party, O. W. Bunker Malta Ltd." Doc. 96, at 5. The text of EKO's terms and conditions was in the record before the court of appeals, which quoted the pertinent language, 745 F. App'x at 418, and then identified the question requiring remand as "whether EKO had taken a firm position *that NCL* be bound by EKO's terms and conditions here." *Id*. at 419 (emphasis added). Counsel for Defendants may argue the contrary proposition at the hearing scheduled *infra*.

EKO's terms and conditions," and directed a remand because "the district court's factual findings regarding EKO's insistence are insufficient to resolve this dispute." 745 F. App'x at 419. The Second Circuit's ensuing discussion about how the parties could create a sufficient evidentiary record bears repeating, since it informed the subsequent litigation steps taken by counsel:

> The [district] court inferred that since OWB Malta was a "regional affiliate of the world's largest bunker broker" and "EKO was a major local supplier of bunker fuels," the parties likely had many other dealings through which OWB Malta became aware of EKO's terms and conditions. [*NCL (Bahamas) Ltd.*, 280 F. Supp. 3d] at 345. However, OWB Malta's agreement raises the issue of whether EKO insisted but does not answer it.
>
> There are no findings as to whether, by trade custom or OWB Malta's experience with EKO, the EKO terms and conditions were requirements in actual effect or whether negotiations over such terms and conditions are customarily conducted or customarily foreclosed. On remand, the district court may consider evidence on those questions or any others, alternatively or in addition, to support a finding as to EKO's insistence. Without such a finding, the district court could not hold that NCL was likely to succeed on the forum-selection issue. A preliminary injunction was therefore not warranted.

745 F. App'x at 419. The Second Circuit concluded *NCL II* with the pointed instruction that the case is –

> REMANDED for the district court to consider whether EKO insisted that its terms and conditions apply to NCL and hold any further proceedings consistent with this order.

*Id.* at 420.

Counsel for the parties, instructed by the Second Circuit's direction and guidance in *NCL II*, embarked upon a course of deposition-taking and related discovery in foreign countries. Counsel made use of procedures delineated in the Hague Convention on the Taking of Evidence Abroad. The principal deposed witnesses were: Ioannis Voskos, EKO's counsel in charge of contractual

3

terms between EKO and its customers; Panagiotis Bachtis, at the pertinent times the legal representative of the Piraeus office of O.W. Malta; and Melina Chaliakopoulou, at the pertinent times the O.W. Malta bunker trader who handled the *Norwegian Spirit* bunkering transaction. Voskos and Bachtis gave testimony before a judge of a Greek court. Chaliakopoulou gave testimony before a QC appointed as Examiner by an English court. American attorneys for the parties attended the depositions and questioned the witnesses. Transcripts of the depositions are now a part of the record before this Court.

The parties take predictably different views of this recent evidence. NCL contends that "[t]he new evidence fully corroborates" the Court's earlier inference that "EKO insisted on application of its terms and conditions such that the London arbitration provision in O.W. USA's contract is replaced by the Greek jurisdiction clause in EKO's terms and conditions." NCL Brief [Doc. 95], at 1. O.W. USA contends that "NCL has not indisputably proven that EKO insisted its terms and conditions applied to NCL." O.W. USA Brief [Doc. 96], at 29.

The brief for O.W. USA contains the notation "oral argument requested." *Id.* at 1. I think that the Court will derive additional assistance from oral submissions by able counsel in this interesting and important case. However, the present procedural posture more closely resembles the conclusion of a bench trial. I think of the contemplated efforts of counsel as "closing summations," rather than arguments on a contested motion.

The Court will hold a hearing by Zoom conference at **10:30 a.m.** on **Wednesday,**

**September 8, 2021.**

       It is SO ORDERED.

       Dated:   New Haven, Connecticut
                     August 12, 2021

                                                  */s/Charles S. Haight, Jr.*
                                                  CHARLES S. HAIGHT, JR.
                                                  Senior United States District Judge